UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| MICHAEL DORSEY, | : | | |
| Plaintiff, | : | Civil Action No.: | 10-0741 (RMU) |
| v. | : | Re Document Nos.: | 5, 6, 7, 10, 12, 18, 19, 24 |
| DISTRICT OF COLUMBIA *et al.*, | : | | |
| Defendants. | : | | |

# MEMORANDUM OPINION

GRANTING THE DISTRICT OF COLUMBIA'S MOTION TO DISMISS; GRANTING DEFENDANT
CLAYTOR'S MOTION TO DISMISS; DISMISSING *SUA SPONTE* THE CLAIMS AGAINST
DEFENDANTS AFFILIATED COMPUTER SERVICE, BABERS, BUTLER, MATTHEWS AND GLASSOR

## I. INTRODUCTION

The *pro se* plaintiff has brought suit against the District of Columbia ("the District"), the D.C. Department of Motor Vehicles ("DMV"), various DMV employees and a DMV contractor, Affiliated Computer Services ("ACS"). He alleges that the defendants have interfered with his business of "assisting persons and businesses with parking and moving violation matters." Two of the defendants – the District and DMV employee Cassandra Claytor – have filed motions to dismiss. Because the plaintiff lacks standing to bring his claims, the court grants these defendants' motions to dismiss and *sua sponte* dismisses the claims against the remaining defendants.

## II. BACKGROUND

### A. Factual Background[1]

The plaintiff is an individual engaged in the business of "assisting persons and businesses with parking and moving violation matters."[2] *See* Compl. at 1. The plaintiff alleges that the defendants have "devised numerous . . . tactics that interfere with the plaintiff's efforts to assist persons and business[es] with parking and traffic ticket problems at the District of Columbia [DMV]." *Id.* at 2. Among these "tactics" are the refusal by the DMV clerk to schedule hearings for the plaintiff, the public's lack of access to online scheduling for parking ticket hearings and the refusal by hearing officers to proceed with hearings when the police officer who issued the ticket fails to appear or when a required affidavit is unattainable. *Id.* at 2, 7. The plaintiff also states that a District of Columbia law is interfering with his business by denying enrollees of a DMV program called the "fleet program" the ability to challenge their parking tickets.[3] *Id.* at 2. The plaintiff does not indicate that he is a participant in this program. *See generally* Compl.

---

[1] The plaintiff presents a cornucopia of claims, many of which are incoherent and wholly unrelated to one another. *See generally* Compl. Indeed, the complaint itself is riddled with incomplete sentences and is largely incomprehensible. *Id.* Notwithstanding these challenges, the court attempts to glean the relevant facts from the complaint and treats all discernable factual allegations as true. *City of Waukesha v. Envtl. Prot. Agency,* 320 F.3d 228, 235 (D.C. Cir. 2003) (per curiam) (holding that the merits of a case must be assumed when considering standing); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (noting that a "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" (internal quotation marks and citation omitted)).

[2] The plaintiff provides no information regarding his business or employment duties beyond this statement. *See generally* Compl.

[3] The plaintiff fails to provide any description or further information regarding the "fleet program," beyond professing that it is illegal. *See* Compl. at 6. Nor does the plaintiff specify the D.C. Code provision that he claims states that companies enrolled in the "fleet program" "may not receive hearings regarding parking tickets." *See id*. at 3.

Additionally, the plaintiff alleges that DMV officials were "punishing" him by changing the format of parking tickets. *Id.* at 8. The old format of parking tickets required police officers to check the "owner box" on the ticket, which presumably would require that a vehicle's owner be held liable for the ticket. *Id.* DMV officials requested that the D.C. Council modify the parking tickets so as to not require that the "owner box" be checked. *Id.* at 8.

According to the plaintiff, the defendants have "created what came to be known as 'The Dorsey Rules,' a group of discriminatory artifices that target the plaintiff." *Id.* at 4. One of these rules allows the chief hearing examiner to ban the plaintiff from the DMV building for a time period which she deems appropriate if it is discovered that the plaintiff gave a DMV employee anything of value. *Id.* The plaintiff claims that this rule, which is incorporated into the "Municipal Regulations," is not enforced against "other representatives."[4] *Id.*

In addition, the plaintiff's complaint presents the following broad allegations, though with little if any factual context:

(1) The DMV management "maintain[s] a gender-based hierarchy. . . that deliberately excludes males." *Id.* at 6.

(2) Defendants David Glasser and Desiree Matthews made a false written claim that the plaintiff sexually harassed Matthews without providing any evidence of sexual harassment. *Id.*

(3) D.C. Council members receive preferential treatment at the DMV. *Id.* at 9-10.

(4) DMV hearing officers do not receive copies of recent court and Traffic Adjudication Appeals Board decisions that may have an impact on their own

---

[4] Presumably, the plaintiff's reference to "other representatives" are individuals who are also in the "business [of] assisting persons and businesses with parking and moving violation matters." Compl. at 1.

3

decisions, resulting in erroneous hearing officer decisions and, in turn, unlawful increased revenues for the DMV. *Id.* at 8.

(5) The DMV is issuing illegal, unfair and defective tickets. *Id*. at 9.

(6) Defendant ACS[5] failed to maintain tickets properly, resulting in ticket recipients receiving ticket reports two years after a ticket had been issued. *Id.* at 6.

(7) DMV agents "illegally withheld and [] allowed to be withheld information according to the Freedom of Information Act of the District of Columbia," concerning D.C. Council member Michael Brown. *Id*. at 3.

### B. Procedural History

On May 5, 2010, the plaintiff commenced this action, alleging that the defendants violated the Fourteenth Amendment when they "persecuted, discriminated against and engaged [in] personal animus against him." Compl. at 1, 3. The plaintiff also contends that he was discriminated against when D.C. Council members "receive[d] unfair and preferential treatment with parking ticket costs." *Id.* at 4. Additionally, the plaintiff makes broad, conclusory allegations of gender discrimination, slander and violations of the District of Columbia Freedom of Information Act ("D.C. FOIA"). *See* Compl. at 3, 6. Although the plaintiff's complaint does not specify that he is bringing suit under 42 U.S.C. § 1983, he does indicate on the civil cover sheet form attached to his complaint that he is filing the suit under "the Fourteenth Amendment to the U.S. Constitution [and] 42 USC 1983." *See* Compl., Civil Cover Sheet at 2. As relief, the plaintiff seeks an order requiring the Department of Justice to perform "[a] comprehensive investigation of the operations at the District of Columbia [DMV]." Compl. at 9. He also requests a court order requiring that DMV officials "cease and desist allowing members of the

---

[5]  Affiliated Computer Services, Inc. owns ACS State and Local Solutions, Inc., an independent subsidiary company that provides services to the District of Columbia "in connection with tickets issued by the [DMV] for parking violations." ACS Mot. to Dismiss at 1.

4

D.C. Council to receive preferential treatment when they receive notices of [an] infraction." *Id.* Finally, the plaintiff requests punitive and compensatory damages in the amount of $500,000.[6] *Id.* at 9.

The District and defendant Claytor have filed motions to dismiss the complaint, arguing, *inter alia*, that the plaintiff lacks standing to bring this suit.[7] *See* District's Mot. to Dismiss; Def. Claytor's Mot. to Dismiss.[8] With these motions ripe for adjudication, the court turns to the applicable legal standards and the parties' arguments.

## III. ANALYSIS

### A. Legal Standard for Standing

Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies. U.S. CONST. art. III, § 2, cl. 1. These prerequisites reflect the "common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). Consequently, "a showing of standing 'is an essential and unchanging' predicate to any exercise of [a court's] jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S.

---

[6] The plaintiff also sought a temporary restraining order ("TRO") requiring the DMV employees to "cease and desist [utilizing] tactics against this plaintiff's efforts to assist persons and businesses with notices of infraction that appear before the agency; and allow participants in the Fleet Adjudication Program to adjudicate parking tickets." Compl. at 9-10. On May 17, 2010, this court denied the plaintiff's motion for a TRO. *See generally* Mem. Op. (May 17, 2010). The plaintiff has since filed multiple motions asking the court to reconsider its ruling. *See generally* Pl.'s Mot. to Recons. TRO; Pl.'s Mot. for Protective Order; Pl.'s Mot. to Expedite. Because the court dismisses the plaintiff's claims for lack of standing, the plaintiff's motions for reconsideration of this court's May 17, 2010 ruling are denied as moot.

[7] Defendant ACS also filed a motion to dismiss, but did not assert standing grounds. *See generally* ACS Mot. to Dismiss at 1. Because the court *sua sponte* dismisses any claims against ACS based on the plaintiff's lack of standing, its motion to dismiss is denied as moot.

[8] The motions filed by the District and Claytor are largely identical. *Compare* Def. D.C.'s Mot. to Dismiss *and* Def. Claytor's Mot. to Dismiss.

5

555, 560 (1992)). Put slightly differently, "Article III standing must be resolved as threshold matter." *Raytheon Co. v. Ashborn Agencies, Ltd.*, 372 F.3d 451, 453 (D.C. Cir. 2004) (citing *Steel Co.*, 523 U.S. at 96-102).

As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing. *Lujan*, 504 U.S. at 561; *Steel Co.*, 523 U.S. at 104; *City of Waukesha v. Envtl. Prot. Agency*, 320 F.3d 228, 233 (D.C. Cir. 2003) (per curiam). The extent of the plaintiff's burden varies according to the procedural posture of the case. *Sierra Club v. Envtl. Prot. Agency*, 292 F.3d 895, 898-99 (D.C. Cir. 2002). At the pleading stage, general factual allegations of injury resulting from the defendant's conduct will suffice. *Id.* On a motion for summary judgment, however, the "plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts which for purposes of the summary judgment motion will be taken to be true." *Id.* at 899 (internal quotation marks omitted) (citing *Lujan*, 504 U.S. at 561; FED. R. CIV. P. 56); *accord Fla. Audubon*, 94 F.3d at 666.

To demonstrate standing, a plaintiff must satisfy a three-pronged test. *Sierra Club*, 292 F.3d at 898 (citing *Lujan*, 504 U.S. at 560). First, the plaintiff must have suffered an injury in fact, defined as a harm that is concrete and actual or imminent, not conjectural or hypothetical. *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 243 (D.C. Cir. 1999) (citing *Steel Co.*, 523 U.S. at 103). Second, the injury must be fairly traceable to the governmental conduct alleged. *Id.* Finally, it must be likely that the requested relief will redress the alleged injury. *Id.* This Circuit has made clear that no standing exists if the plaintiff's allegations are "purely 'speculative[, which is] the ultimate label for injuries too implausible to support standing.'" *Tozzi v. Dep't of Health & Human Servs.*, 271 F.3d 301, 307 (D.C. Cir. 2001) (quoting *Advanced Mgmt. Tech., Inc. v. Fed. Aviation Admin.*, 211 F.3d 633, 637 (D.C. Cir. 2000)). Nor does standing exist

where the court "would have to accept a number of very speculative inferences and assumptions in any endeavor to connect [the] alleged injury with [the challenged conduct]." *Winpisinger v. Watson*, 628 F.2d 133, 139 (D.C. Cir. 1980).

### B. The Court Dismisses the Plaintiff's Claims for Lack of Standing

The District and Claytor argue that the plaintiff lacks standing because he has "made no showing . . . that he, personally, suffered any threatened or actual injury resulting from the defendant's putatively illegal action." District's Reply at 2; Def. Claytor's Reply at 2. The plaintiff does not address the issue of standing in his oppositions, except to say that he has standing under *Erickson v. Pardus*, 551 U.S. 89 (2007). *See* Pl.'s Opp'n to District's Mot. to Dismiss; Pl.'s Opp'n to Def. Claytor's Mot. to Dismiss.

The plaintiff is correct insofar as he suggests that under *Erickson v. Pardus*, courts are required to liberally interpret a *pro se* plaintiff's pleadings and documents. 551 U.S at 94. This principle does not, however, dispense with the constitutional requirement that the plaintiff have standing to bring his claims. *See Ndaba v. Obama*, 697 F. Supp. 2d 75, 78 (D.D.C. 2010) (dismissing a *pro se* plaintiff's action because he failed to show the requisite standing to bring his claims). Instead, to survive the defendants' motion to dismiss, the plaintiff must satisfy, *inter alia*, the first element of the "irreducible constitutional minimum of standing" by alleging that he has "suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, nor conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations omitted).

The bulk of the plaintiff's claims are based on actions taken by the defendants that purportedly impede ticket recipients from receiving a fair hearing. *See generally* Compl. Nothing in the plaintiff's submissions suggests, however, that the plaintiff has himself received a

7

ticket or been denied a hearing. *See generally* Compl.; Pl.'s Opp'n to District's Mot. to Dismiss; Pl.'s Opp'n to Def. Claytor's Mot. to Dismiss. At most, the plaintiff's complaint suggests that his standing is derived from the economic harm that the defendants' actions have on his business when his clients' rights are allegedly violated. *See* Compl. at 2, 3 (stating that DMV officials "illegally interfere with the plaintiff's *efforts to assist companies*" and that the defendants "devised numerous unfair and illegal tactics that interfere with the plaintiff's *efforts to assist persons and businesses* with parking and traffic ticket problems" (emphasis added)). An injury to his business interest derived from the alleged deprivation of a fair hearing for his clients is, however, by itself insufficient to establish the plaintiff's standing. *See e.g., Rumber*, 595 F.3d at 1301 (holding that the proper parties to bring suit opposing condemnation of a strip-mall were the "property-owning businesses, not their employees or stakeholders" despite the injuries that the latter might suffer as a result of condemnation); *Am. Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1364 (D.C. Cir. 2000) (holding that an immigration lawyer's organizations had no standing because they faced no legal sanction from the immigration law that they were contesting, notwithstanding that the contested law had the effect of impeding the immigrants' access to attorneys); *Goodman v. Fed. Commc'ns Comm'n*, 182 F.3d 987, 992 (D.C. Cir. 1999) (concluding that a receiver lacked standing to bring suit on behalf of the receiver licensees despite the congruency of their interests). Accordingly, the plaintiff has failed to demonstrate that he has standing to contest the DMV's alleged denial of fair hearings to certain ticket

recipients.[9]

The plaintiff also fails to demonstrate any personal harm that he incurred from the DMV's alleged "maint[enance of] a gender-based hierarchy . . . that deliberately excludes males." Compl. at 6. The plaintiff has not shown that this alleged discrimination has impaired his business or that he himself has been discriminated against as a DMV employee or a prospective employee. *Rainbow/PUSH Coal. v. Fed. Commc'ns Comm'n*, 396 F.3d 1235, 1241 (D.C. Cir. 2005) (noting that "stigmatizing, noneconomic injury caused by racial discrimination accords a basis for standing only to those persons who are personally denied equal treatment"). In fact, the plaintiff has not claimed that he has suffered any injury as a result of the alleged gender discrimination. *See generally* Compl. Thus, the plaintiff also lacks standing to bring any employment-based gender discrimination claims under 42 U.S.C. § 1983.

For these reasons, the court dismisses any of the plaintiff's claims that relate to a deprivation of a fair hearing on a violation or parking ticket matter or the alleged "gender-hierarchy" of DMV officials. Such dismissal is rendered *sua sponte* as to those defendants who have not moved to dismiss based on the plaintiff's lack of standing. *Weaver's Cove Energy, LLC v. R.I. Dep't of Envtl. Mgmt.*, 524 F.3d 1330, 1334 (D.C. Cir. 2008) (dismissing an action *sua sponte* for lack of standing).

The plaintiff's complaint, read liberally, also suggests a claim of defamation, *see* Compl. at 6 (stating that defendants Glasser and Matthews made a false written claim that the plaintiff

---

[9] Nor does the plaintiff establish that he has third party standing because he fails to show that his clients, *i.e.* ticket recipients, are unable to sue the defendants themselves. *Goodman*, 182 F.3d at 992 (holding that "mere congruence of interests" was insufficient to establish third party standing because the plaintiff had to also show that there was some hindrance to the third party's ability to protect his or her own interests); *see also Reno*, 199 F.3d at 1364 (noting that a presumption exists "against suits seeking relief for a large and diffuse group of individuals, none of whom are parties to the lawsuit").

sexually harassed Matthews without providing any evidence of sexual harassment), and a claim under the D.C. FOIA, *see id.* at 3 (alleging that DMV agents "illegally withheld and [] allowed to be withheld information [about D.C. Council member Michael Brown] according to the Freedom of Information Act of the District of Columbia"). The court, however, declines to exercise supplemental jurisdiction over these remaining claims and dismisses them pursuant to 28 U.S.C § 1367(c)(3). *See Shekoyan v. Sibley Int'l*, 409 F.3d 414, 424 (D.C. Cir. 2005) (stating that "[a] district court may choose to retain jurisdiction over, or dismiss, pendent state law claims after federal claims are dismissed" and that "[i]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims" (internal quotation marks and citations omitted)).

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendants District of Columbia and Claytor's motions to dismiss and dismisses the plaintiff's complaint as to all remaining defendants. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 2nd day of November, 2010.

RICARDO M. URBINA<br>
United States District Judge